# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**LINDA MCLAIN and COLLEEN GAMER,**
**individually on behalf of themselves and**
**those similarly situated,**

     **Plaintiff,**

                                **Case No. 3:16cv502/MCR/CJK**

**v.**

**SAMUEL POPPELL and EMERALD**
**COAST EYE INSTITUTE, LLC f/k/a**
**EMERALD COAST EYE INSTITUTE, P.A.,**

     **Defendants.**

_____/

## FINAL ORDER AND JUDGMENT

This matter is before the Court on Plaintiffs' motion for final approval of class settlement. *See* ECF No. 41. For the reasons that follow, the Court finds that Plaintiffs' motion is due to be **GRANTED** and the proposed settlement is **APPROVED**.

## I. Background

Plaintiffs Linda McLain and Colleen Gamer, on behalf of themselves and others similarly situated, filed this action against their former employers, Defendants Samuel Poppell and Emerald Coast Eye Institute, LLC f/k/a Emerald Coast Eye

Institute P.A. ("Eye Institute"), to recover losses allegedly caused by Defendants'
mismanagement of the Eye Institute's 401(k) employee retirement plan ("the Plan").
Poppell, founder and principal of the Eye Institute, served as fiduciary for the Plan.
In that role, Poppell selected the Plan's investments and directed the allocation of
the Plan's assets to those investments.  Plaintiffs allege that during the time period
relevant to this case, Poppell invested a significant portion of the Plan's assets into
a single, volatile stock despite continuous and precipitous declines in the stock's
value.   As a result, class members suffered actual losses in excess of $600,000 and
additional underperformance damages estimated to be in excess of $500,000.

In their complaint, Plaintiffs asserted a claim for breach of the fiduciary duties
of prudence and diversification, in violation of ERISA, based on Defendants' alleged
failure to diversify and prudently manage the Plan's investments.[1]  Plaintiffs also
allege that Poppell lacked sufficient education, experience and skill to serve as Plan
fiduciary and that he failed to seek independent professional assistance from a
qualified investment advisor.   In late 2016, after Plaintiffs filed their complaint,
Defendants reached an agreement with the Department of Labor wherein they
"agreed to reimburse the class members' out-of-pocket losses, plus some interest."

---

[1] Plaintiffs Linda McLain and Colleen Gamer also asserted individual claims for retaliation,
in violation of ERISA, 29 U.S.C. § 1140, and wrongful termination, in violation of the Florida
Whistleblower Act, Fla. Stat. § 448.102.  Those claims were dismissed with prejudice on July 16,
2018.  *See* ECF No. 42.

*See* ECF No. 39 at 10. This reimbursement covered most, but not all, of the damages sought in this case. Thereafter, the Court certified a class under Federal Rule of Civil Procedure 23(b)(3) and directed the parties to engage in mediation. Following extensive negotiations before The Honorable Miles Davis, the parties reached a proposed settlement agreement. *See* ECF No. 39-1. On March 14, 2018, the Court entered an order preliminarily approving the proposed class settlement, approving the notice plan, class counsel's fees and costs, service awards for the class representatives, and the plan of allocation, and setting a final fairness hearing. *See* ECF No. 40. The fairness hearing was held on July 18, 2018.[2]

## II.    The Settlement

Under the Settlement Agreement, Defendants will pay a total gross amount of $180,000 into a settlement fund for the benefit of the class. After payments of Court-approved attorneys' fees and costs, expenses, taxes, and class representative service awards, the remaining net settlement funds will be distributed to individual class members *pro rata*, based on each class member's contributions to the Plan. In exchange for the settlement funds, class members will release any claims "relat[ed] to the purchase or other acquisition, ownership or disposition of the securities in the" Plan that were, or could have been, asserted in this case. *See* ECF No. 39-1 at 2-3.

---

[2] Final approval of the class settlement was briefly delayed to allow Defendants additional time to comply with the governmental notice requirements under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. No government official has filed objections to the settlement agreement.

## III.    Final Approval of Class Action Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  A court should approve a class action settlement where it is "fair, reasonable, and adequate," Fed R. Civ. P. 23(e)(2), and "not the product of collusion between the parties," *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  In assessing a settlement's fairness, adequacy and reasonableness, courts balance the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2016); *cf Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  In doing so, a court "should not try the case on the merits."  *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990).  Rather, the Court should "rely upon the judgment of experienced counsel" and, absent evidence of collusion, "should be hesitant to substitute its own judgment for that of counsel."  *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015).

### A.    Reasonableness of the Notice to the Class

Before granting final approval of a class action settlement, a court must ensure that reasonable and adequate notice was provided to class members.  *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  Notice must be "reasonably calculated, under all circumstances, to apprise [class members] of the pendency of the action and afford them an opportunity to present their objections."  *Id*.  While reasonable efforts should be made to reach the entirety of the class, Rule 23 does not require that each individual class member actually receive notice.  *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).  Instead, the rule requires only "the best notice that is practicable under the circumstances," directed individually "to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

In this case, the Court previously approved the form and content of the parties' proposed notice plan as "reasonably calculated, under the circumstances, to apprise [s]ettlement [c]lass [m]embers of the pendency of this action, the terms of the proposed settlement, and of their rights under and with respect to" it.  *See* ECF No. 40 at 3-4.  The Court concluded that that the proposed notice plan satisfied "all applicable requirements of law, including, but not limited to, . . . all substantive and procedural due process rights guaranteed by the United States Constitution."  *See id*. at 4.  Class counsel has now represented that notice was provided in accordance with the approved plan.  *See* ECF No. 41 at 5.  The Court thus finds that the notice was reasonable, adequate, and the best practicable under the circumstances.

B.    **The Absence of Fraud or Collusion**

In evaluating a settlement's fairness, adequacy and reasonableness, a court must ensure that the settlement is not the product of collusion by the negotiating parties. *Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).  In making this determination, courts begin with "a presumption of good faith in the negotiation process." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014).  "Where the parties have negotiated at arm's length, the [c]ourt should find that the settlement is not the product of collusion." *Id.*

In this case, the record reflects that the settlement is the product of serious, informed, non-collusive, arm's-length negotiations.  Class counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the class's interests.  The parties were aided in the negotiation process by The Honorable Miles Davis, a well-known judge and respected mediator.  The class members had already recovered most of their losses by virtue of Defendants' restitution agreement with the Department of Labor.  The instant settlement agreement resolves their remaining losses.  Finally, class counsel has moved for a fee and cost award that, in percentage terms, is at the bottom end of that frequently sought and approved in the Eleventh Circuit. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  In short, both the negotiations and the substantive terms of the parties' agreement reflect a good faith,

arm's length bargaining process.  Therefore, the Court finds that the settlement was not the product of fraud or collusion.

## C.    Likelihood of Success at Trial

The likelihood of success at trial is "weighed against the . . . relief contained in the settlement." *Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005).  Again, the Court's role is not to try the case on the merits," *Behrens*, 118 F.R.D. at 539, and in assessing this factor, the Court should "afford[] great weight to the recommendations of counsel for the parties," *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), aff'd, 893 F.2d 347 (11th Cir. 1989).  "Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement."  *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007).

In this case, Plaintiffs have expressed confidence in their ability to prevail at trial; however, they acknowledge "meaningful risks and obstacles" that could impede their ability to obtain comparable damages at trial.  *See* ECF No. 39 at 17. Indeed, there exists a real possibility that Plaintiffs could come away with nothing or with a damages award far lower than the settlement fund.  None of the class members "have disputed that these obstacles exist and are formidable."  *See Hall v. Bank of America, N.A*., 2014 WL 7184039, at *4 (S.D. Fla. Dec. 17, 2014).  In light

of the litigation risks Plaintiffs face absent settlement, the Court finds that this factor favors final approval.

### D.    Probability and Range of Possible Recovery Measured Against the Relief Offered by the Settlement

The second and third factors—the range of possible recovery and the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable—are interrelated and favor approval of the settlement in this case. *See Saccoccio*, 297 F.R.D. at 693. It is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared "with the [relief] plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing." Manual for Complex Litig. (Third) § 30.42, at 238 (1995). Accordingly, the relevant inquiry is whether the proposed settlement affords relief that "falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil Co. v. Wotco Corp*., 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), aff'd, 166 F.3d 581 (3rd Cir. 1999). In other words, a court should compare the "possible recovery at trial" with the "proposed settlement in its totality" to determine whether the relief provided in the settlement represents a fair, adequate and reasonable compromise of the claims presented. *Lipuma*, 406 F. Supp. 2d at 1322.

In this case, the Court finds that the settlement amount falls well within the range of reasonableness, when considering the risks of continued litigation. Indeed,

the $180,000 recovery here appears to constitute approximately 66% of the class's maximum provable damages, which far exceeds the average percentage of recovery in many ERISA and securities class action lawsuits. *See, e.g., In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class's total estimated losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving settlement recovering 3.2% of maximum provable damages); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (affirming district court's approval of settlement that recovered 24.3 to 35.5% of maximum provable damages); *Behrens*, 118 F.R.D. at 542 (approving settlement of $.20 per share even though it was "a small fraction of the desired recovery of $3.50"). Taken with the fact that there are no objections to the settlement, the Court finds the second and third factors favor final approval.

### E.    The Complexity, Expense, and Likely Duration of Trial

ERISA litigation generally involves complex issues of law and fact, and this case is no exception that rule. *See Griffin v. Habitat for Humanity Int'l, Inc*., 157 F. Supp. 3d 1301, 1306 (N.D. Ga. 2015) ("[T]he law governing ERISA is complex and, at times, virtually incomprehensible to all but the most studied and skilled."). The class is comprised of almost 50 members, which includes at least 24 employees who actively participated in the Plan and at least one beneficiary for each Plan participant.

The parties have already expended significant resources over the last two years on informal investigations, class certification discovery, and mediation. Further litigation would be time-consuming and expensive. Indeed, even if Plaintiffs were to prevail, formal discovery, pretrial proceedings, a class trial, and the appellate process could go on for years. Under these circumstances, the Court finds that the complexity, expense, and likely duration of continued litigation strongly favor final approval.

### F.    Substance and Amount of Opposition

Courts "consider[] the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. *Hall*, 2014 WL 7184039, at *5; *accord Lipuma*, 406 F. Supp. 2d at 1324 ("[T]he reaction of the class is an important factor."). It is "extremely unusual not to encounter objections" of some sort or number in response to a proposed class action settlement. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998). In this case, the record reflects that 100% of the class members were sent the notice of settlement. *See* ECF No. 41-1 at 1-2. No class member has objected to the settlement or otherwise opted out.[3] Additionally, the requisite notice was sent to the appropriate

---

[3] The Court notes that following class certification, but before the parties reached a settlement, 10 requests for exclusion from the class were received. *See* ECF No. 41-1 at 2. Class

federal and state attorneys general, none of whom lodged an objection to the settlement. *See* ECF No. 46 at 1-2. The Court thus finds that the reaction of the class and the various government officials supports final approval of the settlement.

### G.    Stage of Proceedings

The stage of the proceedings at which settlement is achieved is evaluated "to ensure that the plaintiffs ha[d] access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Perez*, 501 F. Supp. 2d at 1383. "[V]ast formal discovery need not be taken," and in fact, "informality in the discovery of information is desired." *Lipuma*, 406 F. Supp. 2d at 1324. The proper inquiry with respect to this factor is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case," *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3rd Cir. 1998), such that they were not "groping in the darkness" when negotiating the settlement, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).[4] In this case, the record reflects that sufficient class certification and informal discovery was completed to enable Plaintiffs and class counsel to intelligently assess the merits of Plaintiffs' claims, the strengths of the

---

counsel indicates that "[a]ll of the individuals who submitted exclusion requests are believed to be current employees of the Defendants." *See* ECF No. 39 at 10.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

defenses asserted by Defendants, and the value of Plaintiffs' claims for purposes of settlement. The parties engaged in private settlement discussions and later participated in a settlement conference with a magistrate judge, where they ultimately reached the proposed agreement. The only remaining discovery pertains to damages experts, which would be a costly and time-consuming endeavor. On this record, the Court finds that the stage of the proceedings at which settlement was achieved weighs in favor of final approval of the settlement.

On balance, after considering the relevant factors, the Court finds that the proposed settlement is not the product of collusion and, instead, is fair, adequate, and reasonable.

## IV.    Final Approval of Class Counsel's Attorneys' Fees and Costs

Class counsel also seeks final approval of attorneys' fees and costs, which the Court preliminarily approved by Order dated March 14, 2018. *See* ECF No. 40. It is well-established that class counsel may be awarded reasonable attorneys' fees and nontaxable costs, calculated based on the nature of the litigation and the benefit obtained for the class. *See* Fed. R. Civ. P. 23(h); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). The nonexclusive factors a court should consider in determining the reasonableness of the attorneys' fees are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other

employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I*, 946 F.2d at 772.

The fee requested by class counsel in this case is $36,000, plus $6,048.83 in costs, which represents approximately 20% of the total gross value of the settlement. This falls at the bottom end of the range of 20-30% that has been approved by the Eleventh Circuit in similar cases. *See id*. Regarding time and labor, class counsel represented that it spent "significant time" investigating the case, conducting class certification discovery and motions practice, exchanging and analyzing informal discovery, and mediating the class claims; class counsels' responsibilities will continue after final approval of the settlement. This matter was in many ways an "undesirable" case, given that "the potential recovery at its highest point hovered around seven figures at best" and "collection of any judgment was far from certain." *See* ECF No. 39 at 24. Finally, the complexity of the issues here required a high degree of legal skill, as ERISA is a niche practice. Class counsel's considerable expertise in complex class actions is reflected in the favorable result that was achieved under the circumstances presented in this case. Taken together, these

factors support a finding that class counsel's attorneys' fees and costs are fair and reasonable.

## V.    Final Approval of Service Awards

Class counsel has recommended service awards in the amount of $1,000 each to Plaintiffs Linda McLain and Colleen Gamer.  *See* ECF No. 39 at 25.  Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Serv., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1357-58 (S.D. Fla. 2011) (collecting cases and awarding $5,000 to each named class representative).

The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing this litigation.  *See id*.  In this case, the Court finds that McLain and Gamer expended substantial time and effort in meeting their

fiduciary obligations to the class—both in this litigation and in the related Department of Labor investigation, which resulted in Defendants paying restitution that covered most of the class member's losses, plus interest—and they deserve to be compensated for it.  The Court thus authorizes service awards of $1,000 per class representative.

Accordingly, it is **ORDERED**:

1.    Plaintiffs' Motion for Final Approval of Class Settlement, ECF No. 41, is **GRANTED**.

2.    **Jurisdiction**.  Because due, adequate, and the best practicable notice was given and all potential class members were given the opportunity to exclude themselves from or object to the settlement, the Court finds that it has personal jurisdiction over all class members and that venue is proper.[5]  The Court also finds that it has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve and enforce the settlement and dismiss the action on the merits and with prejudice, all while retaining jurisdiction to enforce the settlement as provided below.

3.    **Adequacy of Representation**.  The Court finds that Linda McLain, Colleen Gamer, and class counsel have adequately represented the class for purposes of entering into and implementing the settlement.

---

[5] *See, e.g.*, *Phillips Petroleum*, 472 U.S. at 811-12.

4.    **Class Notice**.  The Court finds that the parties fully discharged their duties regarding the provision of notice to all class members of both the certification of the class and the class settlement.  The Court further finds that the dissemination of the notices:

(a)    constituted the best practicable notice to class members under the circumstances of this action;

(b)    constituted notice that was reasonably calculated, under the circumstances, to apprise class members of (i) the pendency of this action; (ii) the terms of the proposed settlement; (iii) their rights under the proposed settlement, including their right to exclude themselves from the settlement class or object to any aspect of the settlement; (iv) their right to appear at the fairness hearing, either on their own or through counsel hired at their own expense, if they did not exclude themselves from the class; and (v) the binding effect of the orders and judgment in this case, whether favorable or unfavorable, on all persons who did not request exclusion from the class;

(c)    constituted notice that reasonable, due, adequate, and sufficient notice to all persons entitled to be provided with notice; and

(d)    constituted notice that met all applicable requirements of the Federal Rules of Civil Procedure and the due process clause of the United States Constitution.

5.    **Final Settlement Approval**.

(a)    The Court finds that the terms and provisions of the proposed settlement were negotiated and entered into by the parties in good faith and at arm's length.  The settlement is both substantively and procedurally fair, and is hereby fully and finally approved as fair, reasonable, and adequate as to each of the parties and each of the class members.  The Court further finds that the settlement fully complies with all applicable requirements of the Federal Rules of Civil Procedure and the due process clause of the United States Constitution.  In sum, the settlement is fully and finally **APPROVED** in all respects.

(b)    The parties are hereby directed to implement and consummate the settlement according to its terms and provisions.  The parties are also directed to take all steps necessary and appropriate to provide class members with the benefits to which they are entitled under the settlement.

(c)    The parties are hereby authorized, without further approval from the Court, to agree to and adopt amendments, modifications and expansions of the settlement and its implementing documents, if such changes are not materially inconsistent with this Order and do not materially limit, or materially and adversely affect, the rights of the class members under the settlement as presently before the Court.

6.      **Binding Effect**.  The terms of the settlement and of this Final Order and Judgment shall be forever binding on Linda McLain, Colleen Gamer, and all class members, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors.  The terms of the settlement and of this Final Order and Judgment shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in this action or are otherwise encompassed by the release.

7.      **Release**.  The Court hereby approves, incorporates and adopts the release set forth at paragraphs two, five, and seven of the settlement agreement.  *See* ECF No. 39-1 at 2-4.  The Release is hereby made effective as of the date of "payment and distribution of the settlement" funds and will forever discharge Defendants and the released parties of and from any liability arising in whole or in part from the released claims as defined in the settlement agreement.

8.      **Permanent Injunction**.  Linda McLain, Colleen Gamer, and all of the class members who did not timely exclude themselves from the class are hereby permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating as a party or class member in, or otherwise

pursuing or receiving any benefits from any lawsuit (including putative class actions), arbitrations, administrative, regulatory, or other proceedings or orders in any jurisdiction that is based on or related to, directly or indirectly, in whole or in part, the released claims.  The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the action and settlement.

9.     **Final Judgment and Retention of Jurisdiction**.  The Court expressly finds that there is no just reason for delay and thus the Clerk of Court is directed to enter this Final Order and Judgment as a final judgment.  Without in any way affecting the finality of this final judgment, the Court expressly retains exclusive and continuing jurisdiction over: (a) the administration, consummation, enforcement and interpretation of the settlement, including the release, and the Final Order and Judgment; (b) resolution of any disputes concerning class membership or entitlement to benefits under the terms of the settlement; and (c) all parties hereto, including class members, for purposes of enforcing and administering the settlement and this action generally, until each and every act agreed to be performed by the parties has been performed in accordance with the settlement.

10.     **No Admissions**.  Neither this Final Order and Judgment, nor the settlement, nor any other document referred to herein, nor any action taken to carry out the settlement, is, may be construed as, or may be used as an admission or

concession by or against Defendants or the released parties of the validity of any claim or defense or of any actual or potential fault, wrongdoing or liability. Entering into or carrying out the settlement, and any negotiations or proceedings related to it, shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the settlement and this Final Order and Judgment; provided, however, that the settlement and Final Order and Judgment may be filed in any action brought by or against Defendants or the released parties to support a defense of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusions, issue preclusions or similar defense or counterclaim.

11. **Termination of Settlement**. This Final Order and Judgment shall become null and void and shall be without prejudice to the rights of the parties and class members, all of whom shall be restored to their respective positions existing immediately before the Court entered its March 14, 2018 order preliminarily approving the class settlement, if: (a) the settlement is not consummated or is otherwise terminated by a party in accordance with its provisions; or (b) the settlement does not become effective for any other reason.

12. **Attorneys' Fees and Costs**. Class counsel Peter J. Mougey of Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA, is hereby awarded attorneys'

fees and in the amount of $36,000, to be paid in accordance with the settlement agreement. The Court finds this appoint to be fair and reasonable under Rule 23(h) and in compliance with Eleventh Circuit precedent. The Court also finds that litigation costs and expenses in the amount of $6,048.83, as set forth in the Declaration of Michael C. Bixby, Esq., ECF No. 44, and to be paid in accordance with the settlement agreement, is fair and reasonable based on the nature of the litigation and the benefit obtained for the class.

13.    **Service Awards**. Service awards in the amount of $1,000 per class representative, also to be paid in accordance with the settlement agreement, are hereby approved as fair, reasonable, and consistent with Eleventh Circuit precedent.

12.    **Dismissal of Action**. Subject to the provisions of this Final Order and Judgment, including the Court's retention of jurisdiction as set forth herein, this action (including all individual and class claims presented herein) is hereby dismissed on the merits and with prejudice, and without fees, expenses, or costs to any party or class member, except as otherwise provided by the Court. The Clerk is directed to close the file for all purposes.

**SO ORDERED**, on this 2nd day of January, 2019.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**